# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **TEXAS CLOTHING HOLDING CORP.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 3:22-CV-00590-X** |
| | § | |
| | § | |
| **ZURICH AMERICAN INSURANCE** | § | |
| **COMPANY** | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: */s/ Peri H. Alkas*_____
      Peri H. Alkas
      Texas Bar No.  00783536
      910 Louisiana Street; Suite 4300
      Houston, Texas 77002
      Telephone: 713 626 1386
      Facsimile: 713 626 1388
      Email: peri.alkas@phelps.com

**ATTORNEYS FOR DEFENDANT,**
**ZURICH AMERICAN INSURANCE**
**COMPANY**

# TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................................................ii

TABLE OF AUTHORITIES ..................................................................................................iii

SUMMARY OF THE ARGUMENT ....................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 1

   A.   Summary of Plaintiff's Factual Allegations ............................................................. 1

   B.   The Relevant Provisions of the Policy ...................................................................... 3

APPLICABLE LEGAL STANDARDS .................................................................................... 3

   A.   Legal Standard For Resolving Rule 12(b)(6) Motions ............................................. 3

   B.   Texas Standards of Contract Interpretation .............................................................. 4

ARGUMENT AND AUTHORITIES ....................................................................................... 5

   A.   Plaintiff Has Not Plausibly Alleged Direct Physical Loss or Damage to Covered Property  5

      1.   "Direct Physical Loss or Damage" Requires a Distinct Physical Alteration ................. 5

      2.   The Period of Liability Reinforces the Conclusion that Any Loss or Damage Must be Physical ...................................................................................................... 8

      3.   Coronavirus Itself Does Not Cause or Constitute "Direct Physical Loss or Damage" ..... 8

      4.   The Civil Orders Also Do Not Cause or Constitute Direct Physical Loss or Damage ... 13

   B.   Business Interruption Coverage Under the Policy's "Time Element" Coverage Section is Not Triggered ...................................................................................................... 14

   C.   Plaintiff Cannot Recover Under Special Coverages ...................................................... 14

      1.   Contingent Time Element and Protection and Preservation of Property ..................... 15

      2.   Civil or Military Authority .................................................................................... 15

   D.   Exclusions Also Apply to Preclude Coverage ................................................................ 17

      1 .   Contamination Exclusion Bars Coverage ............................................................... 18

      2.   Loss of Use Exclusion ......................................................................................... 22

      3.   Law Or Ordinance Exclusion ................................................................................ 23

   E.   Amendment is Futile ............................................................................................ 24

CONCLUSION .................................................................................................................... 24

CERTIFICATE OF SERVICE ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Aggie Invs., L.L.C. v. Cont'l Cas. Co.*,
No. 21-40382, 2022 WL 257439 (5th Cir. Jan. 26, 2022)......................................................7, 8

*Ascent Hosp. Mgmt. Co., LLC v. Emps. Ins. Co. of Wausau*,
No. 21-11924, 2022 WL 130722 (11th Cir. Jan. 14, 2022)....................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................3, 4, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................3, 4

*Blackburn v. City of Marshall*,
42 F.3d 925 (5th Cir. 1995) ........................................................................................................3

*Boscov's Dept. Store, Inc. v. Am. Guar. & Liab. Ins. Co.*,
946 F. Supp. 3d 354 (E.D. Pa. 2021) *appeal docketed,* No. 21-2422 (3rd Cir.
July 30, 2021)...............................................................................................................................21

*BR Rest. Corp. v. Nationwide Mut. Ins. Co.*,
No. 21-2100-cv, 2022 WL 1052061 (2d Cir. (NY) Apr. 8, 2022)............................................5

*Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*,
19 F.4th 1002 (7th Cir. 2021) ...................................................................................................22

*Brown Jug, Inc. v. Cincinnati Ins. Co.*,
27 F.4th 398 (6th Cir. (Mich.) 2022) ........................................................................................5

*Cafe La Trova LLC v. Aspen Specialty Ins. Co.*,
519 F. Supp. 3d 1167 (S.D. Fla. 2021) ...................................................................................11

*Carilion Clinic, et al. v. Am. Guar. & Liab. Ins. Co.*,
No. 7:12-CV-00168, 2022 WL 347617 (W.D. Va. Feb. 4, 2022) ..........................................21

*Cordish Cos., Inc. v. Affiliated FM Ins. Co.*,
No. 21-2055, 2022 WL 1114373 (4th Cir. (Md) Apr. 14, 2022).............................................5

*Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*,
20 F.4th 303 (7th Cir. (Ill.) 2021) ............................................................................................5

*Dickie Brennan & Co v. Lexington Ins. Co.*,
636 F.3d 683 (5th Cir. 2011) ..............................................................................................16, 17

*Diesel Barbershop, LLC v. State Farm Lloyds*,
    479 F. Supp. 3d 353 (W.D. Tex. 2020)..........................................................................3, 13, 16

*DZ Jewelry, LLC v. Certain Underwriters at Lloyd's, London*,
    525 F. Supp. 3d 793 (S.D. Tex. 2021) ....................................................................8, 10, 11, 17

*Fernandez-Montes v. Allied Pilots Ass'n*,
    987 F.2d 278 (4th Cir. 1993) ............................................................................................3, 4

*Fiess v. State Farm Lloyds*,
    392 F.3d 802 (5th Cir. 2004) ................................................................................................4

*Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*,
    No. 21-11046, 2021 WL 3870697 (11th Cir. (Ga) Aug. 31, 2021)..........................................6

*Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*,
    21 F.4th 704 (10th Cir. (Ok.) 2021), *petition for cert. filed* (U.S. Apr. 18,
    2022) ...................................................................................................................................5

*Goodwood Brewing, LLC v. United Fire Grp.*,
    No. 21-5759, 2022 WL 620149 (6th Cir. (Ky.) Mar. 3, 2022)................................................5

*Graileys, Inc. v. Sentinel Ins. Co., Ltd.*,
    No. 20-CV-01181, 2021 WL 3524032 (N.D. Tex. Aug. 9, 2021)..........................................17

*Great Am. Ins. Co v Emps. Mut. Cas. Co.*,
    18 F.4th 486 (5th Cir. (Tex.) 2021) ....................................................................................20

*Hajer v. Ohio Sec. Ins. Co.*,
    20-CV-00283, 2020 WL 7211636 (E.D. Tex. Dec. 7, 2020) ..................................................4

*Harmon v. City of Arlington*,
    16 F.4th 1159 (5th Cir. 2021) ........................................................................................9, 10

*Hartford Ins. Co. v. Miss. Valley Gas. Co.*,
    181 F. App'x 465 (5th Cir. 2006) ........................................................................................6

*ILIOS Prod. Design, LLC v. Cincinnati Ins. Co.*,
    No. 20-CV-00857-LY, 2021 WL 1381148 (W.D. Tx. April 12, 2021) ..............................6, 7

*Indep. Rest. Grp. v. Certain Underwriters at Lloyd's, London*,
    513 F. Supp. 3d 525 (E.D. Pa. 2021), *appeal docketed,* No. 21-1175 (5th Cir.
    Jan. 29, 2021)....................................................................................................................11

*Kelson v. Clark*,
    1 F.4th 411 (5th Cir. 2021) ..................................................................................................9

*Khatchik Hairabedian v. Sec. Nat'l Ins. Co.*,
   No. 22-CV-00920, 2022 WL 1071508 (C.D. Cal. Mar. 10, 2022), *appeal filed*
   (9th Cir. Apr. 7, 2022) ............................................................................................12

*Kim-Chee, LLC v. Phila. Indem. Ins. Co.*,
   No. 21-1082-cv, 2022 WL 258569 (2d Cir. (NY) Jan. 28, 2022) ......................................5, 11

*L&J Mattson's Co. v. Cincinnati Ins. Co., Inc.*,
   536 F. Supp. 3d 307 (N.D. Ill. 2021) ..................................................................11

*Lamacar, Inc. v. Cincinnati Ins. Co.*,
   2022 WL 227162 (N.D. Tex. Jan. 26, 2022) ...........................................................7

*Lawyers Title Ins. Co. v. Doubletree Partners, L.P.*,
   739 F.3d 848 (5th Cir. 2014) ............................................................................4

*LDWB #2 LLC v. FCCI Ins. Co.*,
   No. 20-cv-425, 2021 WL 2744568 (W.D. Tex. July 1, 2021)..............................................23

*Lindenwood Female Coll. v. Zurich Am. Ins. Co.*,
   No. 20CV1503, 2021 WL 5050065 (E.D. Mo. Nov. 1, 2021), *appeal filed* (8th
   Cir. Nov. 30, 2021) ........................................................................................21

*Luna v. Nationwide Prop. & Cas. Ins. Co.*,
   798 F. Supp. 2d 821 (S.D. Tex. 2011) ..................................................................3

*Maynard v. PayPal, Inc.*,
   18-CV-0259, 2019 WL 3552432 (N.D. Tex. Aug. 5, 2019).................................................4

*Monday Rests. v. Intrepid Ins. Co.*,
   No. 21-2462, 2022 WL 1194000 (8th Cir. (Mo.) Apr. 22, 2022)...........................................5

*Morgan v. Swanson*,
   659 F.3d 359 (5th Cir. 2011) ............................................................................9

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
   15 F.4th 885 (9th Cir. (Cal.) 2021) ...................................................................5, 22

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
   487 F. Supp. 3d 834 (N.D. Cal. 2020), *aff'd*, 15 F.4th 885 (9th Cir. 2021) ....................11, 22

*NTT Data Int'l, LLC v. Zurich Am. Ins. Co.*,
   No. 21-CV-890-S, 2022 WL 196533 (N.D. Tex. Jan. 21, 2022), *appeal filed*
   (5th Cir. Feb. 21, 2022).......................................................................7, 17, 19, 21

*O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*,
   512 F. Supp. 3d 1019 (N.D. Cal. 2021) ................................................................22

*Pan Am Equities, Inc. v. Lexington Ins. Co.*,
  959 F.3d 671 (5th Cir. 2020) ...................................................................4, 5

*Parker Law Firm v. Travelers Indem. Co.*,
  985 F.3d 579 (8th Cir. 2021) .........................................................................6

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
  620 F.3d 465 (5th Cir. 2010) .......................................................................24

*S. Tex. Med. Clinics, PA v. CNA Fin. Corp.*,
  No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ................16

*Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*,
  20 F.4th 327 (7th Cir. 2021) ........................................................................12

*Santo's Italian Cafe LLC v. Acuity Ins. Co.*,
  15 F.4th 398 (6th Cir. 2021) ..........................................................................6

*Selery Fulfillment v. Colony Ins. Co.*,
  525 F. Supp. 3d 771 (E.D. Tex. 2021) .......................................................13

*Singh v. RadioShack Corp.*,
  882 F.3d 137 (5th Cir. 2018) ..........................................................................3

*Steiner Steakhouse, LLC v. Amco Ins. Co.*,
  No. 20-CV-858-LY, 2020 WL 8879041 (W.D. Tex. Dec. 30, 2020) ........6

*Sys. Optics, Inc. v. Twin City Fire Ins. Co.*,
  No. 21-3556, 2022 WL 616968 (6th Cir. (Oh.) Mar. 2, 2022) .................5

*T.O. v. Fort Bend Indep. Sch. Dist.*,
  2 F.4th 407 (5th Cir. 2021), *petition for cert. docketed* (U.S. Jan. 18, 2022) ...........................9

*Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*,
  22 F.4th 450 (5th Cir. 2022) ................................................................. *passim*

*Uncork & Create, LLC v. Cincinnati Ins. Co.*,
  27 F.4th 926 (4th Cir. (W. Va.) 2022) ....................................................5, 11

*United Airlines Inc. v. Insurance Co of State of Pennsylvania*,
  439 F.3d 128 (2d Cir. 2006).........................................................................16

*Univ. of St. Thomas v. Am. Home Assurance Co.*,
  No. H-20-2809, 2021 WL 3129330 (S.D. Tex. July 23, 2021) ..............10

*Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*,
  514 F. Supp. 3d 1217 (S.D. Cal. 2021), *appeal docketed*, No. 21-55090 (9th
  Cir. Feb. 5, 2021) ..........................................................................................12

*Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*,
No. 20-CV-1348, 2021 WL 2936066 (N.D. Tex. July 13, 2021)...........................................10

*Vizza Wash, LP v. Nationwide Mut. Ins. Co.*,
496 F. Supp. 3d 1029 (W.D. Tex. 2020)..................................................................................6

**State Cases**

*APX Operating Co., LLC v. HDI Global Ins. Co.*,
No. N21C-03-058, 2021 WL 5370062 (Del Super. Ct. Nov. 18, 2021)................................19

*Circus LV, LP v. AIG*,
No. 21-15367, 2022 WL 1125663 (9th Circ. (Nev.) Apr. 15, 2022).......................................5

*E. Tex. Fire Ins. Co. v. Kempner*,
27 S.W. 122 (Tex. 1894)...........................................................................................................4

*Farmers Ins. Exch. v. Greene*,
376 S.W.3d 278 (Tex. Ct. App. 2012), *aff'd*, 446 S.W.3d 761 (Tex. 2014)............................4

*Firebirds Int'l, LLC v. Zurich Am. Ins. Co.*,
No. 2020-CH-05360, 2021 WL 2007870 (Ill. Cir. Ct. Apr. 19, 2021).............................19, 21

*Provident Life & Accident Ins. Co. v. Knott*,
128 S.W.3d 211 (Tex. 2003)....................................................................................................18

*Valley Health Sys., Inc. v. Zurich Am. Ins. Co.*,
No. BER-L-1907-21, 2021 WL 4958349 (N.J. Super. Ct. Law Div. Oct. 18,
2021) .......................................................................................................................................19

**State Statutes**

La. Rev. Stat 22:1311.................................................................................................................20

**Rules**

Fed. R. Civ. Proc. 12(b)(6) .....................................................................................................1, 3

Federal Rule of Civil Procedure 8(a)(2) ......................................................................................3

**Other Authorities**

2 COUCH ON INS. § 18:20 (3d Ed. 2020) .................................................................................20

COUCH ON INSURANCE § 148:3 (3d ed. Dec. 2021 update)..................................................6

COUCH ON INSURANCE § 148:46 ....................................................................................6, 7

COUCH ON INSURANCE § 148:46 (3d ed. 2005)...................................................................6

**TO THE HONORABLE JUDGE BRANTLEY STARR**

Zurich American Insurance Company (herein "Zurich" or "Insurer") submits this Memorandum in Support of its Motion to Dismiss under Fed. R. Civ. Proc. 12(b)(6).

**SUMMARY OF THE ARGUMENT**

This insurance coverage dispute arises from economic claims asserted by Plaintiff, Texas Clothing Holding Corp. (herein "Texas Clothing" or "Plaintiff"), as a result of the COVID-19 pandemic. Zurich moves this Court for dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Such dismissal is proper as a matter of law because Plaintiff has failed to plead any facts that support that Plaintiff sustained "direct physical loss of or damage caused by a Covered Cause of Loss" to insured property. Additionally, the Contamination, Loss of Use, and Law or Ordinance Exclusions in its insurance policy each provide a further basis for dismissal.

**FACTUAL BACKGROUND**

**A.   Summary of Plaintiff's Factual Allegations**

Plaintiff asserts it is a "global powerhouse" and fashion leader with a portfolio of over 40 owned or licensed brands across all channels of distribution.[1] Plaintiff has both retail and wholesale operations.[2]

Plaintiff alleges claims for breach of contract and declaratory judgment based on Zurich's denial of coverage under a first-party commercial property policy for Plaintiff's alleged economic losses arising from Coronavirus and COVID-19.[3] Plaintiff alleges it was forced to cease or severely restrict its business activities as a result of the actual or threatened presence of

---

[1] Plaintiff's Original Complaint ("POC") ¶ 1.

[2] *Id.* ¶ 2.

[3] Plaintiff refers to the "SARS-CoV-2" virus as "Coronavirus" and the disease that it causes as "COVID-19." Sometimes courts have referred to these terms interchangeably.

1

Coronavirus at its properties or the ensuing governmental closures for nonessential businesses.[4] Plaintiff claims it voluntarily closed most of its stores in advance of the government orders due to the alleged presence of Coronavirus.[5]  As a result, it could not use its properties as intended.[6]

In conclusory fashion, Plaintiff alleges that it is "certain or near certain that Coronavirus droplets and aerosols were dispersed repeatedly into the air and on the property in, on and around Texas Clothing's properties…"[7]  Plaintiff, however, does not allege any specific instance of Coronavirus being found on its properties.  Rather, it alleges various statistics about prevalence of the virus in the community[8] and that it had 80 employees test positive for the Coronavirus.[9]

Plaintiff seeks coverage for lost business from the times its operations were closed or reduced and expenses it alleged it incurred, such as, for PPE, signage, and installing barriers.[10] Plaintiff alleges that routine cleaning cannot kill the virus, and thus seeks to recover costs incurred for deep-cleaning and sanitizing as well as for distancing measures such as plexiglass.[11]  Plaintiff also seeks coverage for loss of business due to the closure of Attraction and Dependent Locations it claims would normally attract customers to its stores.[12]

---

[4] POC ¶¶ 103-111, 167.

[5] *Id.* ¶¶ 106, 109.

[6] *Id.* ¶¶ 101, 104, 125-26, 154, 167.

[7] *Id*. ¶ 88.

[8] *Id*. ¶¶ 84-98.

[9] *Id*. ¶ 83.

[10] *Id*. ¶¶ 122, 127-133.

[11] *Id*. ¶¶ 28, 64, 74, 122.

[12] *Id*. ¶¶ 217-218.

B.    **The Relevant Provisions of the Policy**

Zurich issued the EDGE-GLOBAL Policy PPR0186522-04 to Texas Clothing (the "Policy"), attached to the Complaint as Ex. 1-7.  The Policy was effective from November 1, 2019, until November 1, 2020.  The Policy includes sections that inform the parties of the coverages granted and/or the losses that are excluded.  For the sake of brevity and convenience, the relevant Policy provisions are quoted in an Appendix at the end.

## APPLICABLE LEGAL STANDARDS

A.    **Legal Standard For Resolving Rule 12(b)(6) Motions**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[13]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]  Conclusory allegations, vague allegations, unwarranted factual inferences, and legal conclusions will not survive a motion to dismiss.[15]  A complaint that brings conclusory allegations which are "unsupported by facts" cannot survive a Rule 12(b)(6) motion to dismiss.[16]  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[17]  Accordingly, Federal Rule of Civil Procedure 8(a)(2) requires a complaint to make an actual "showing, rather than a blanket assertion, of entitlement to relief" by providing "more than labels and conclusions" or a "formulaic recitation

---

[13] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353, 358 (W.D. Tex. 2020).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15] *Singh v. RadioShack Corp.*, 882 F.3d 137, 144 (5th Cir. 2018).

[16] *Luna v. Nationwide Prop. & Cas. Ins. Co.*, 798 F. Supp. 2d 821, 828 (S.D. Tex. 2011).

[17] *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quoting *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (4th Cir. 1993).

of the elements of a cause of action" but rather provide "[f]actual allegations" that "raise a right to relief above a speculative level."[18]  Where it appears "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should be dismissed.[19] A court need not "accept as true a legal conclusion couched as a factual allegation."[20]

Moreover, where a claim arises out of a contract, and the contract itself contradicts the allegations upon which the claim depends, the court may disregard the allegations of the complaint and dismiss the claims.[21]

### B. Texas Standards of Contract Interpretation

The parties agree that Texas law applies to the interpretation of the Policy.  Under Texas law, courts must enforce the plain language of an insurance policy giving effect to every term.[22] Courts "must enforce the contract as made by the parties, and cannot make a new contract for them."[23]  Courts are "loathe to engraft by judicial fiat additional terms requiring [an insurer] to assume liability for a risk the Policy specifically excluded."[24]  The party seeking coverage has the initial burden of bringing its claims within the ambit of coverage; then the burden shifts to the insurer to demonstrate applicability of any exclusions barring coverage.[25]

---

[18] *Twombly*, 550 U.S. at 555n.3, 555-56.

[19] *Fernandez-Montes,* 987 F.2d at 285.

[20] *Iqbal*, 556 U.S. at 678.

[21] *See Maynard v. PayPal, Inc.*, 18-CV-0259, 2019 WL 3552432, at *10 (N.D. Tex. Aug. 5, 2019) (Fitzwater, Senior J.).

[22] *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020); *Lawyers Title Ins. Co. v. Doubletree Partners, L.P.*, 739 F.3d 848, 865 (5th Cir. 2014).

[23] *E. Tex. Fire Ins. Co. v. Kempner*, 27 S.W. 122, 122 (Tex. 1894).

[24] *Farmers Ins. Exch. v. Greene*, 376 S.W.3d 278, 286 (Tex. Ct. App. 2012), *aff'd*, 446 S.W.3d 761 (Tex. 2014).

[25] *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004); *Hajer v. Ohio Sec. Ins. Co.*, 20-CV-00283, 2020 WL 7211636, at *2 (E.D. Tex. Dec. 7, 2020).

## ARGUMENT AND AUTHORITIES

### A. Plaintiff Has Not Plausibly Alleged Direct Physical Loss or Damage to Covered Property

Plaintiff's claims for declaratory judgment and breach of contract fail because Plaintiff has not pled the type of loss insured by the Policy.  Courts in the Fifth Circuit, Texas, and across the country have held that allegations like Plaintiff's do not plausibly allege "direct physical loss or damage" to property.

### 1. "Direct Physical Loss or Damage" Requires a Distinct Physical Alteration

An all-risk policy is not an all-loss policy. The Policy insures "***direct physical*** loss of or damage"[26] (such as a building from a fire) and the time element losses during the period of restoration (such as lost profits while the building is being restored from that fire).  The term "direct physical loss of or damage" to property must, as with all of the Policy's terms, be afforded its plain and ordinary meaning.[27]

The appellate courts in the Second, Fourth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits[28] have all held that "direct physical loss or damage" means a distinct alteration and actual

---

[26] This requirement is further enforced by the following provision of the Policy:  "This Policy does not insure against:  . . . Any reason other than *physical loss or damage* insured by this Policy."  *See* Policy 4.02.06.01.01.03 (emphasis added).

[27] *Pan Am*, 959 F.3d at 674.

[28] *See Kim-Chee, LLC v. Phila. Indem. Ins. Co.,* No. 21-1082-cv, 2022 WL 258569 (2d Cir. (NY) Jan. 28, 2022); *BR Rest. Corp. v. Nationwide Mut. Ins. Co.*, No. 21-2100-cv, 2022 WL 1052061 (2d Cir. (NY) Apr. 8, 2022); *Cordish Cos., Inc. v. Affiliated FM Ins. Co.*, No. 21-2055, 2022 WL 1114373 (4th Cir. (Md) Apr. 14, 2022); *Uncork & Create, LLC v. Cincinnati Ins. Co.,* 27 F.4th 926 (4th Cir. (W. Va.) 2022); *Monday Rests. v. Intrepid Ins. Co.*, No. 21-2462, 2022 WL 1194000 (8th Cir. (Mo.) Apr. 22, 2022);  *Sys. Optics, Inc. v. Twin City Fire Ins. Co.*, No. 21-3556, 2022 WL 616968 (6th Cir. (Oh.) Mar. 2, 2022); *Goodwood Brewing, LLC v. United Fire Grp.*, No. 21-5759, 2022 WL 620149 (6th Cir. (Ky.) Mar. 3, 2022); *Brown Jug, Inc. v. Cincinnati Ins. Co.,* 27 F.4th 398 (6th Cir. (Mich.) 2022); *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303 (7th Cir. (Ill.) 2021); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. (Cal.) 2021); *Circus LV, LP v. AIG*, No. 21-15367, 2022 WL 1125663 (9th Circ. (Nev.) Apr. 15, 2022);  *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704 (10th Cir.

change to insured property that either makes the property unsatisfactory for future use or requires that repairs be made, which did not occur here.[29]   Furthermore, there is no state or federal appellate court decision holding to the contrary.

The Fifth Circuit has stated that "property insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property."[30] Therefore, to establish any coverage under the Policy, Plaintiff *must* make a showing of *direct physical* loss of or damage to property.[31]   Even where an insurance policy does not define the term "physical loss," the Fifth Circuit has held the ordinary definition of the term "is widely held to exclude alleged losses that are intangible or incorporeal."[32]   Texas courts have held the same.[33]   Therefore, where a policy, as

---

(Ok.) 2021), *petition for cert. filed* (U.S. Apr. 18, 2022); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697 (11th Cir. (Ga) Aug. 31, 2021) (not ordered for publication).

[29] "Direct physical loss" also is satisfied by complete physical dispossession of property, such as "where . . . [property] was stolen or dispersed to the wind by a tornado." *Parker Law Firm v. Travelers Indem. Co.*, 985 F.3d 579, 585 (8th Cir. 2021); *see also Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 15 F.4th 398, 403 (6th Cir. 2021) (observing "major risk categories" of "physical loss" include "deliberate theft" in addition to "breakage/physical damage/destruction") (quoting 10A COUCH ON INSURANCE § 148:3 (3d ed. Dec. 2021 update)).  This type of "direct physical loss" is not at issue here.

[30] *Hartford Ins. Co. v. Miss. Valley Gas. Co.*, 181 F. App'x 465, 470 (5th Cir. 2006).

[31] *Id.*

[32] *Id.* (quoting 10A COUCH ON INSURANCE § 148:46 (3d ed. 2005)) ("The requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to . . . preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.");

[33] *Vizza Wash, LP v. Nationwide Mut. Ins. Co.,* 496 F. Supp. 3d 1029, 1039 n.7 (W.D. Tex. 2020) (citation omitted) ("[m]any courts applying Texas law have routinely held that 'direct physical loss' requires there to be some 'distinct, demonstrable physical alteration of the property'"); *ILIOS Prod. Design, LLC v. Cincinnati Ins. Co.,* No. 20-CV-00857-LY, 2021 WL 1381148, at *5 (W.D. Tx. April 12, 2021) (Magistrate's recommendation), *report & recommendation adopted by* 2021 WL 4487990 (May 7, 2021) (applying the definition from 10A COUCH ON INSURANCE § 148:46 and holding that "direct physical loss" requires there be "some physical manifestation of loss or damage to the" property itself); *Hartford Ins. Co.*, 181 F. App'x at 470 (citing 10A COUCH ON INSURANCE § 148:46); *Steiner Steakhouse, LLC v. Amco Ins. Co.*, No. 20-CV-858-LY, 2020 WL 8879041, at *4 (W.D. Tex. Dec. 30, 2020) (finding that "direct physical loss" is not ambiguous and requires a "distinct, demonstrable, physical alteration of the property").

here, requires a "physical loss" as a condition of coverage, there is no coverage for "any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable physical alteration of the property."[34]

Recently, in a COVID-19 insurance action like this one, the Fifth Circuit, interpreting Texas law, joined these courts in holding that direct physical loss requires physical alteration. The Fifth Circuit held that a similar business interruption provision requiring "direct physical loss" "unambiguously requires a loss of property, not the loss of use of property." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 458 (5th Cir. 2022) ("A 'physical loss of property' cannot mean something as broad as the 'loss of use of property for its intended purpose.'  None of those words fall within the plain meaning of physical, loss, or property.") *See also Aggie Invs., L.L.C. v. Cont'l Cas. Co.*, 2022 WL 257439, *2-3 (5th Cir. Jan. 26, 2022).  While the Fifth Circuit did not have the opportunity to address the meaning of direct physical "damage" in *Terry Black's*, Texas federal courts have held that the reasoning of *Terry Black's* on direct physical loss applies equally to direct physical damage.  *See NTT Data Int'l, LLC v. Zurich Am. Ins. Co.*, No. 21-CV-890-S, 2022 WL 196533, at *5 (N.D. Tex. Jan. 21, 2022), *appeal filed* (5th Cir. Feb. 21, 2022); *Lamacar, Inc. v. Cincinnati Ins. Co.*, 2022 WL 227162, at *5 (N.D. Tex. Jan. 26, 2022) ("[e]ven though the Fifth Circuit recognized that ''loss' and 'damage'' have two distinct meanings in this context, its holding that the COVID-19 pandemic did not cause physical loss of property supports the conclusion that it did not cause physical damage either." *Cf Terry Black's* ("Nothing physical or tangible happened to [the] restaurants at all.")).  Moreover, the Fifth Circuit in *Aggie Investment* made the following observation that is equally applicable to "loss" and "damage":  "whether a business is directed to cease one kind of service or all of its services, that

---

[34] *ILIOS*, 2021 WL 1381148, at *5 (quoting 10A COUCH ON INSURANCE § 148:46).

order is not a tangible alteration or deprivation of *property*. Nothing tangible happened to Aggie Investments' property." 2022 WL 257439, at *2 (emphasis in original). Thus, both direct physical loss and direct physical damage require structural alteration. And as explained below, neither the Coronavirus or the Civil Orders qualify as loss or damage as a result.

### 2. The Period of Liability Reinforces the Conclusion that Any Loss or Damage Must be Physical

The Policy's "Period of Liability" reinforces the conclusion that any loss or damage must be "physical." The Policy's "Period of Liability" (also known as a Period of Restoration) under the Time Element provision reinforces the requirement that any loss to property must be direct and physical because it is defined as (1) "[s]tarting from the time of *physical loss or damage of the type insured*," and (2) "[e]nding when with due diligence and dispatch the building and equipment could be…(a) [*r*]*epaired or replaced*; and (b) [m]ade ready for operations, under the same or equivalent physical and operating conditions that existed *prior to the damage*." Policy, § 4.03.01.01 (emphasis added.)

Courts across the country have reached this same conclusion after analyzing similar policy language. *See, e.g., Terry Black's*, 22 F.4th at 456 (holding period of restoration supports conclusion that direct physical loss requires tangible alteration); *DZ Jewelry, LLC v. Certain Underwriters at Lloyd's, London*, 525 F. Supp. 3d 793, 801 (S.D. Tex. 2021) (agreeing and then holding the insured does not plausibly allege that COVID-19 caused direct physical loss of, or damage to, the insured premises).

### 3. Coronavirus Itself Does Not Cause or Constitute "Direct Physical Loss or Damage"

Plaintiff claims the actual or threatened presence of Coronavirus on its property amounts to direct physical loss or damage to such property.[35] However, courts have explicitly and

---

[35] *See, e.g.*, POC ¶¶ 4, 6, 99-101. Plaintiff's allegation that "Coronavirus invaded, transformed, physically altered and damaged the air and surfaces of indoor spaces of [Plaintiff's] properties (*id.*

repeatedly held that the presence of Coronavirus or COVID-19 is insufficient to trigger coverage where "direct physical loss of or damage" is required.  Plaintiff's virus allegations fail to state a claim because its property was not "damaged" by the virus and any resulting loss of use does not qualify as "direct physical loss" either.

As a threshold matter, Plaintiff's virus allegations are conclusory.  While Plaintiff has POC subsections titled "The Presence of Coronavirus in the Indoor Air of Texas Clothing's Properties As Well As on Surfaces Caused The Physical Loss of or Damage to those Properties by Physically Altering the Air and the Surfaces of those Properties as Well as Causing The Loss, In Whole or in Part, Of the Functional Use of those Properties," there are no facts that demonstrate any demonstrable physical alteration of any insured location.[36]  Instead, Plaintiff offers the conclusory allegation: "it is indisputable that persons infected with COVID-19 exhale millions of Coronavirus virions into the air of the buildings they occupy.  This is proof of the actual, certain presence of Coronavirus at Texas Clothing's properties."[37]  Then Plaintiff simply pleads the conclusory allegation that because Coronavirus was supposedly present on its properties and the properties of

---

¶ 4), is a conclusion of law or fact that the Court need not and should not accept as true.  *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Harmon v. City of Arlington*, 16 F.4th 1159, 1162-63 (5th Cir. 2021) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) ("The court does not, however, 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement."); *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (same); *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 413 (5th Cir. 2021), *petition for cert. docketed* (U.S. Jan. 18, 2022) (citations omitted) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  Conclusional allegations, naked assertions, and 'formulaic recitations of the elements of a cause of action will not do.'").

[36] POC at p.38.  Moreover, calling something a "fomite" does not plead or establish physical alteration.  Coronavirus can still be wiped away or left to die on its own.  *See* p. 17 *infra*.

[37] POC ¶ 84.

others, it physically altered the air, airspace, and surfaces, simply by being present.[38]  Pleading elements of a claim in conclusory fashion, however, is not sufficient pleadings of facts.[39]

Numerous courts in Texas and across the country have found similar allegations insufficient to plausibly allege direct physical loss of or damage to property.  *See, e.g., Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 20-CV-1348, 2021 WL 2936066, at *6 (N.D. Tex. July 13, 2021) ("[D]espite the repeated use of the word 'physical,' the third amended complaint does not plausibly plead that [the] property suffered a distinct, demonstrable, physical alteration."); *Univ. of St. Thomas v. Am. Home Assurance Co.*, No. H-20-2809, 2021 WL 3129330, at *5 (S.D. Tex. July 23, 2021) (presence of the SARS-CoV-2 virus on UST's campus in the air and on the surfaces of its facilities not sufficient to allege "a distinct, demonstrable, physical alteration of the property.").  These courts explained that "COVID-19 does not cause physical damage to property; it causes people to get sick." *DZ Jewelry,* 525 F. Supp. 3d at 799-800 (collecting cases).

Plaintiff is similarly situated to the policyholder in *DZ Jewelry*.  In *DZ Jewelry*, the policyholder alleged that it closed because "people infected by the virus, or who had contact with other infected people, have likely visited Zadok's store, and thereby contaminated Zadok's store and surrounding property with the virus by the time of the Closure Orders, and thereafter."  *Id.* at 796.  The insured alleged that three of the employees tested positive for COVID-19, though it did not affirmatively allege that the employees were in the store while they were contagious.  *Id.* Further, the plaintiff had alleged that the fear of transmission of the virus and the Closure Orders adversely impacted its business.  *Id.*

---

[38] Plaintiff's contentions that the presence of Coronavirus caused direct physical loss or damage to its properties are conclusions of law or fact that the Court need not accept as true.  *See* footnote 41, *supra*.

[39] *See Harmon*, 16 F.4th at 1162-63.

The court found Zadok had not plausibly alleged damage to property stating, "Even if Zadok had alleged that the employees tested positive within a certain period before or after being in the store, that would not plausibly allege that the store property was actually contaminated by COVID-19, much less that COVID-19 caused physical damage to the store." *Id.* at 799.

Plaintiff also does not allege facts about any needed repair or replacement of "damaged" property because here there is no damaged property to be fixed. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834, 840 (N.D. Cal. 2020), *aff'd*, 15 F.4th 885 (9th Cir. 2021) ("But here, there is nothing to fix, replace, or even disinfect for [the plaintiff] to regain occupancy of its property."); *Uncork & Create,* 27 F.4th at 933 n.11 ("Uncork has not alleged that any such presence [of viral particles] would require the repair, rebuilding, replacement, or permanent relocation necessary to trigger coverage…."). As the Second Circuit put it, "[e]ven assuming the virus's presence at [the insured's property], the complaint does not allege that any part of its building or anything within it was damaged—let alone to the point of repair, replacement, or total loss." *Kim-Chee LLC*, 2022 WL 258569, at *2 (dismissing complaint alleging virus is "ubiquitous, such that it exists everywhere," and "was present at, in, throughout, and on" the premises and property surfaces). Thus, the lack of alleged repairs further demonstrates that the Coronavirus did not cause direct physical loss of or damage to Plaintiff's property.[40]

---

[40] Employing minor remediation or preventive measures to help limit the spread of the virus (POC ¶ 122) are not "repairs" either and do not constitute direct property damage or loss. *See, e.g., L&J Mattson's Co. v. Cincinnati Ins. Co., Inc.*, 536 F. Supp. 3d 307, 315, n.3 (N.D. Ill. 2021) ("additions such as Plexiglas, hand sanitizer, air purifiers or improved HVAC systems do not constitute repairs to damaged property where a plaintiff has not alleged damage to property. Instead, those additions constitute improvements to stop the spread of virus from one person to another"); *Cafe La Trova LLC v. Aspen Specialty Ins. Co.*, 519 F. Supp. 3d 1167, 1182 (S.D. Fla. 2021) (citation omitted) ("Plaintiff's rearranging of furniture and installation of partitions cannot 'reasonably be described as repairing, rebuilding, or replacing'" and cannot constitute "the very 'damage' it now asserts is sufficient to invoke coverage"); *Indep. Rest. Grp. v. Certain Underwriters at Lloyd's, London*, 513 F. Supp. 3d 525, 534-535 (E.D. Pa. 2021), *appeal docketed,* No. 21-1175 (5th Cir. Jan. 29,

Moreover, the need to conduct cleaning does not imply there was damage either. While Plaintiff seeks coverage for enhanced cleaning expenses,[41] such expenses are not repairs under the Policy. *See Ascent Hosp. Mgmt. Co., LLC v. Emps. Ins. Co. of Wausau*, No. 21-11924, 2022 WL 130722, at *3 (11th Cir. Jan. 14, 2022) ("'[D]irect physical loss or damage requires an actual physical change to property that COVID-19 particles cannot cause' because a contaminated location can be immediately restored to its previous state by cleaning and disinfecting – no repair or replacement required…"); *Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, 514 F. Supp. 3d 1217, 1226 (S.D. Cal. 2021), *appeal docketed*, No. 21-55090 (9th Cir. Feb. 5, 2021) ("If, for example, a sick person walked into one of Plaintiffs' restaurants and left behind COVID-19 particulates on a countertop, it would strain credulity to say that the countertop was damaged or physically altered as a result," as "disinfectant and other cleaning methods can be used to remove or lessen the virus from surfaces."); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021) (COVID-19 "may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days."); *Khatchik Hairabedian v. Sec. Nat'l Ins. Co.*, No. 22-CV-00920, 2022 WL 1071508, at *4 (C.D. Cal. Mar. 10, 2022), *appeal filed* (9th Cir. Apr. 7, 2022) ("Courts have 'squarely rejected the argument that removing the virus from surfaces via cleaning' or other procedures…can qualify as a 'period of restoration.'").

Plaintiff's allegations of loss of use of property due to Coronavirus also do not qualify as direct physical loss or damage.[42] Plaintiff argues the presence of the Coronavirus rendered the property unfit and uninhabitable for normal use, causing the property to lose, in whole or part, its functional

---

2021) (moving equipment and adding plexiglass to make property "functional and reasonably safe for patrons" cannot reasonably be described as repairing, rebuilding, or replacing).

[41] POC ¶ 122.

[42] *Id.* ¶¶ 101, 104, 125-26, 154, 167.

use.[43]  Such loss of use untethered to any direct physical loss or damage does not state a claim.  As noted above, every federal appellate court decision to have addressed the issue agrees that "direct physical loss of or damage to property" requires deleterious physical alteration of property, and mere "loss of use" of property does not qualify.  *See Terry Black's*, 22 F.4th at 456 (applying Texas law) & Section A.1., *supra* (collecting cases).  For these reasons, Plaintiff's allegations about the presence of and implications of Coronavirus fail to state claim.

### 4.      The Civil Orders Also Do Not Cause or Constitute Direct Physical Loss or Damage

Federal courts in Texas and elsewhere have granted motions to dismiss "loss of income" claims on the grounds that the Civil Orders issued in response to COVID-19 do not cause or constitute direct physical loss of or damage to property.  *See, e.g., Selery Fulfillment v. Colony Ins. Co.,* 525 F. Supp. 3d 771, 778 (E.D. Tex. 2021) ("It is too big of a leap to suggest that government orders that restrict access to property constitute 'property damage,' especially when the Policy insures Selery's commercial property location—not its entire business.").  In *Diesel Barbershop*, Senior District Court Judge Ezra granted defendant's motion to dismiss finding that losses caused by government shutdowns because of COVID-19 were not "direct physical loss" and stating "[i]t appears that within our Circuit, the loss needs to have been a 'distinct, demonstrable physical alteration of the property.'"[44]  Indeed, the Fifth Circuit recently affirmed that suspension of operations due to Civil Orders does not qualify as direct physical loss of property because:

> Considering the plain meaning of "physical loss," we conclude TBB's claim is not covered by the [business interruption] provision.  TBB has failed to allege any tangible alteration or deprivation of its property.  Nothing physical or tangible happened to TBB's restaurants at all.  In fact, TBB had ownership of, access to, and ability to use all physical parts of its restaurants at all times.  And importantly, the

---

[43] *Id.* ¶ 154.

[44] *Diesel Barbershop,* 479 F. Supp. 3d at 360 (citation omitted).

prohibition on dine-in services did nothing to physically deprive TBB of any property at its restaurants.

*See Terry Black's*, 22 F.4th at 456.  Similarly, here, despite the Civil Orders,[45] Plaintiff had ownership of and access to all physical parts of its properties at all times.  Any mere loss of use of the properties to their full potential is not "direct physical loss," as explained above.  Thus, Plaintiff has not plausibly alleged direct physical loss or damage.

### B. Business Interruption Coverage Under the Policy's "Time Element" Coverage Section is Not Triggered

Plaintiff seeks coverage for business interruption losses under the Policy's "Time Element" coverage section. Coverage under this section is only available where the insured sustains a "necessary Suspension" of its "business activities at an Insured Location" and the "Suspension" is "*due to direct physical loss of or damage* to Property . . . caused by a Covered Cause of Loss."  As established above, the POC fails to plead any direct physical loss of or damage to property.  The alleged presence of Coronavirus, or the ensuing Civil Orders, do not cause or constitute direct physical loss of or damage to property.  As such, Plaintiff's Time Element coverage claim fails. Plaintiff's claim for Gross Earnings, Extended Period of Liability, Leasehold Interest, and Extra Expense coverages (which are all Time Element coverages) fail for the same reasons.

### C. Plaintiff Cannot Recover Under Special Coverages

Plaintiff also fails to state a claim for "Special Coverages" for Contingent Time Element, Protection and Preservation of Property, and Civil or Military Authority under the Policy Section V.  Each of these coverages requires direct physical loss of or damage to property and other

---

[45] Plaintiff tries to avoid arguing that its losses resulted from the Civil Orders as opposed to virus. However, it admits the Civil Orders required closure of stores.  POC ¶¶ 110, 114.  Moreover, even if it wanted to, Plaintiff could not have opened its locations at full capacity or at all given the Civil Orders.

prerequisites.  Plaintiff has failed to allege facts to satisfy these requirements and thus cannot state a claim for these coverages.

### 1.        Contingent Time Element and Protection and Preservation of Property

As with the Policy's "Time Element" coverage section, the "Contingent Time Element," and "Protection and Preservation of Property" coverage sections provide only limited coverages which are not applicable here.  The Contingent Time Element provision provides:

> This Policy covers the actual Time Element loss … sustained by the Insured … directly resulting from the *necessary Suspension* of the Insured's business activities at an Insured Location if the Suspension results from *direct physical loss of or damage* caused by a Covered Cause of Loss to Property … at Direct Dependent Time Element Locations, Indirect Dependent Time Element Locations, and Attraction Properties….[46]

Likewise, the Protection and Preservation of Property coverage – coverage for "actions to temporarily protect or preserve Covered Property" – is only triggered if such actions are necessary because of an actual or imminent physical loss or damage from a Covered Cause of Loss.[47]  Thus, Plaintiff's claim for these coverages fails for the same reason its Time Element claim fails:  Plaintiff does not plausibly allege facts constituting "direct physical loss or damage" to property.  *See* Section A.3., *supra*.

### 2.        Civil or Military Authority

Plaintiff fails to state a claim for Civil or Military authority coverage.  The Policy's Civil and Military Authority provision provides coverage for:

> [L]oss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location.** That *order must result from a civil authority's response to direct physical loss of or damage caused by a Covered Cause of Loss to property* not owned, occupied, leased or

---

[46] Policy § 5.02.05 (emphasis added).

[47] *Id.* § 5.02.23.

rented by the Insured or insured under this policy and located within the distance of the Insured's Location as stated in the Declarations.[48]

To apply, the suspension of activity must arise from the governmental entity's response to "direct physical loss of or damage caused by a Covered Cause of Loss at property" located within the specified distance of Plaintiff's property.

Courts have consistently found that civil authority coverage does not apply when the governmental order was for protection against a threat and not actual property loss or damage. For instance, in *United Airlines Inc. v. Insurance Co of State of Pennsylvania*, 439 F.3d 128, 134 (2d Cir. 2006), the Second Circuit Court was forced to address a similar issue following the terrorist attacks of 9/11. United sought recovery lost business income under the Civil Authority provision following Reagan International Airport's subsequent closure after the attack on the Pentagon (which United contended was an 'adjacent property' within the scope of the Civil Authority provision in its policy). The Court stated that ceasing operations at the airport was "based on fear of future attacks" as opposed to actual damage incurred at what United argued was an adjacent parcel. *Id.*; *see also Dickie Brennan & Co v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) (following Second Circuit in *United* and denying coverage was afforded because Plaintiff did not show a sufficient nexus between evacuation order in advance of Hurricane Gustav and any property damage); *S. Tex. Med. Clinics, PA v. CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (no business income loss coverage for mandatory hurricane evacuation order in advance of Rita because order was no issued due to property damage).

Here, the Civil Orders were issued to stop the spread of the virus, not because of loss or damage to property other than Plaintiff's locations. *See, e.g., Diesel Barbershop*, 479 F. Supp. 3d

---

[48] *Id.* § 5.02.03 (emphasis added).

at 360 ("COVID-19 is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses.  While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community.").  The Civil Orders did not deny Plaintiff access to its properties but restricted use due to COVID-19 and thus Plaintiff's allegation about lack of access cannot be credited.[49]  Accordingly, courts have rejected claims similar to Plaintiff's in the COVID-19 context.  *See, e.g., NTT Data Int'l*, 2022 WL 196533, at *6 ("Nor do such orders trigger the Policy's Civil or Military Authority Coverage, because they were not issued in response to direct physical damage to or loss of property not belonging to Plaintiffs."); *Graileys, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-01181, 2021 WL 3524032, at *2 (N.D. Tex. Aug. 9, 2021) ("Plaintiff has failed to demonstrate a nexus between property damage and either the presence of coronavirus or from the Dallas County and State of Texas Orders that constitute 'physical loss.'") (citing *Dickie Brennan & Co.*, 636 F.3d at 686 (business owners forced to shut down because of hurricane evacuation order were not entitled to similar coverage because they "failed to demonstrate a nexus between any prior property damage and the evacuation order.")); *DZ Jewelry*, 525 F. Supp. 3d at 801 ("[T]he type of civil-authority orders closing or limiting capacity at issue here [do not restrict access to a location] because of physical damage to other property or premises.").

### D.  Exclusions Also Apply to Preclude Coverage

Because Plaintiff did not sustain "direct physical loss or damage" to its properties, coverage was never triggered under the Policy.  Thus, if the Court agrees, it need not address the exclusions. However, the Contamination, Loss of Use, and Law or Ordinance exclusions also all bar Plaintiff's claim for coverage.

---

[49] POC ¶ 115.

**1 .     Contamination Exclusion Bars Coverage**

Even if Plaintiff could show *direct physical loss or damage* caused by a Covered Cause of Loss, which it cannot and has not, application of the Contamination Exclusion ends the inquiry regarding its claims.  As stated above, Covered Cause of Loss is defined as all risks of direct physical loss of or damage "*unless excluded*."[50] Among the excluded causes of loss, prominently set forth in the section "Exclusions," is the Contamination Exclusion, which provides:

> The following exclusions apply unless specifically stated elsewhere in this Policy:
>
> This policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.
>
> **Contamination,** and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for sue or occupancy...[51]

Section VII – Definitions at § 7.09 further defines **Contamination** as follows:

> **Contamination (Contaminated)** – Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, *virus, disease causing or illness causing agent*, Fungus, mold or mildew.[52]

Plaintiff claims that the Policy does not exclude "virus, pandemics, communicable diseases, COVID-19 or Coronavirus as a cause of loss."[53]  The Policy, by its plain language, however, explicitly states viruses and disease or illness causing agents are in fact excluded by the Contamination Exclusion quoted above.  "When terms are defined in an insurance policy, those definitions control the interpretation of the policy."  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003).  Undefined terms are interpreted according to their ordinary,

---

[50] *See* Policy, § 7.11.

[51] *Id.* at § 3.03.01.01.

[52] *Id.* at § 7.09 (emphasis added).

[53] POC ¶ 146.

plain meaning.  Plaintiff does not dispute that the Coronavirus (SARS-CoV-2), which causes COVID-19, is a virus.

Several courts have already held that the Contamination Exclusion here applies to preclude coverage of COVID-19-related claims.[54]

Plaintiff's argument that the Contamination Exclusion does not exclude coverage, because it only excludes "costs" relating to Contamination, also fails.  Plaintiff erroneously asserts that the Contamination Exclusion does not exclude the "loss" (because it does not use the word "loss"), and only excludes "costs."[55]  The Contamination Exclusion excludes "Contamination, **_and_** any cost due to Contamination."[56]  The Contamination Exclusion does not have to use the word "loss" to exclude both the "loss and damage" and any "costs" related to that Contamination.  Thus, "cost" in this context is not a limiting word.

The Policy contains endorsements of general application and 31 state-specific endorsements.  The "Amendatory Endorsement – Louisiana" does not affect losses in any state except Louisiana.  The argument that the "Amendatory Endorsement - Louisiana" affects

---

[54] _NTT Data Int'l,_ 2022 WL 196533, at *7 ("Because SARS-CoV-2 is a virus that causes COVID-19, the Contamination Exclusion bars overage in this case."); _Firebirds Int'l, LLC v. Zurich Am. Ins. Co._, No. 2020-CH-05360, 2021 WL 2007870, at *4 (Ill. Cir. Ct. Apr. 19, 2021) ("The plain language of the Contamination Exclusion is clear and unambiguous….[T]he ordinary meaning of the exclusion is that any loss caused by a virus and any cost attributed to a virus are excluded from coverage."); _Valley Health Sys., Inc. v. Zurich Am. Ins. Co._, No. BER-L-1907-21, 2021 WL 4958349, at *9 (N.J. Super. Ct. Law Div. Oct. 18, 2021) (holding that Contamination Exclusion need not use the word "pandemic" to apply and would be "akin to arguing that a coverage exclusion for damage caused by fire does not apply to damage caused by a very large fire."); _APX Operating Co., LLC v. HDI Global Ins. Co._, No. N21C-03-058, 2021 WL 5370062, at *6-8 (Del Super. Ct. Nov. 18, 2021) (finding that a similar Pollution and Contamination Exclusion which included viruses excluded coverage if there ever was any and declining to rule on whether "direct physical loss" had been triggered).

[55] POC ¶ 212.

[56] Policy, § 3.03.01.01 (emphasis added).

Plaintiff's locations worldwide is contrary to common sense in contract interpretation.  The assertion that a state-specific endorsement controls all locations ignores the geographic reference to the state.  This very Court has opined that a court "should interpret an insurance policy in a way that (1) confers meaning to all its terms; (2) harmonizes and gives effect to all of the provisions; and (3) avoids rendering part of the policy inoperative or meaningless."[57]

Indeed, the word "Louisiana" is a substantive term and essential geographic identifier of the endorsement's application in that it <u>references</u> the specific place [in the state endorsement] affected by such endorsement, modifying the contents of the endorsement, limiting the application of the endorsement, and by its reference designates how the endorsement fits within the overall structure of the Policy.  Acknowledging this state-identifier does not contradict any terms within the endorsement itself; thus, the Court is not required to ignore the Policy's state identifiers on this or any of the other 30 state-specific endorsements or disregard the structure of the Policy and how endorsements apply.  *See* 2 COUCH ON INS. § 18:20 (3d Ed. 2020) ("The policy must be considered as a whole and the caption read in connection with the remainder of the contents.") Ignoring the geographic limitations of the term Louisiana would render that term futile.

The endorsement is clearly state-specific, as agreed by other jurisdictions facing the same arguments.  State-specific endorsements exist because regulatory directives to insurers vary in different states.  For example, La. Rev. Stat 22:1311, sets forth specific requirements for fire insurance property policies issued within that particular state.

Plaintiff's argument has been asserted and rejected when it has been raised in cases before this.  Courts recognize the need for and existence of endorsements which are created for specific

---

[57] *Great Am. Ins. Co. v Emps. Mut. Cas. Co.,* 18 F.4th 486, 490 (5th Cir. (Tex.) 2021) (quoting J. Starr).

states and do not apply outside of that state.  A similar endorsement was claimed as applying to all states in *Manhattan Partners, LLC.*  In that matter, the court granted the insurer's motion to dismiss, holding:

> The Court is unpersuaded by Plaintiff's argument that the Contagion exclusion has been modified by an endorsement to the Policy which removed the word "virus" ... because "[t]he endorsement to which Plaintiffs refer is titled "Amendatory Endorsement — Louisiana" and appears in a list of state-specific endorsements. ... Had the parties intended to remove "virus" from the Contamination provision, they could have done so with a general endorsement that was not limited to a single state.[58]

Various courts have held that the "Amendatory Endorsement - Louisiana" applies only to risks located within Louisiana.[59]  *See Firebirds Int'l*, 2021 WL 2007870, at *6 ("This Court finds that the Louisiana Amendatory Endorsement does not render the 'Contamination' exclusion ambiguous and inapplicable."); *Boscov's Dept. Store, Inc. v. Am. Guar. & Liab. Ins. Co.*, 946 F. Supp. 3d 354, 369 (E.D. Pa. 2021) *appeal docketed*, No. 21-2422 (3rd Cir. July 30, 2021) (applying as clear and unambiguous the Contamination Exclusion in the Zurich EDGE Policy and rejecting argument that the definition of Contamination in the Amendatory Endorsement – Louisiana applies to the entire policy); *NTT Data Int'l*, 2022 WL 196533, at *7 (rejecting the insured's argument based on the Amendatory Endorsement – Louisiana, in the Zurich EDGE Policy, stating "[t]he endorsement clearly states its geographic limitation in the title, even if it does not do so in the text of the endorsement itself"); *Lindenwood Female Coll. v. Zurich Am. Ins. Co.*, No. 20CV1503, 2021 WL 5050065, at *6 (E.D. Mo. Nov. 1, 2021), *appeal filed* (8th Cir. Nov. 30, 2021) ("This specific amendatory endorsement clearly only applies to property located in Louisiana, as the other Amendatory Endorsements only apply to the specifically referenced states."); *Carilion Clinic, et*

---

[58] *Manhattan Partners*, LLC, 2021 WL 1016113, at *2 n.3.

[59]  Zurich is not relying on the Contamination Exclusion for any location located in Louisiana.

*al. v. Am. Guar. & Liab. Ins. Co.*, No. 7:12-CV-00168, 2022 WL 347617, at *15 (W.D. Va. Feb. 4, 2022) ("Reading the plain language of the 'Amendatory Endorsement – Louisiana,' that endorsement applies to Louisiana.  To conclude otherwise would require the court to read Louisiana out of this endorsement.")

Similarly, the court in *Menard v. Gibson Applied Technology & Engineering, Inc.,* expressly held that an endorsement identified "Louisiana Changes—Legal Action Against Us" was "state-specific" and did "not evidence an intent to give a benefit to individuals who are injured by the insured outside the state of Louisiana."  No. 16-498, 2017 WL 6610466, at *3 (E.D. La. Dec. 27, 2017).  Indeed, the Louisiana insurance regulators have no authority to approve policy changes that would be binding in Texas, Illinois, New Jersey or anywhere else, just like those states cannot dictate insurance terms to be binding in Louisiana.

The alleged presence of the Coronavirus is not direct physical loss or damage, and thus coverage is not triggered.  However, even if this Court disagrees, then the Contamination Exclusion would apply to all property outside Louisiana, unaffected by the state-specific Amendatory Endorsement for Louisiana.

### 2.    Loss of Use Exclusion

The Policy expressly excludes coverage for damage arising from the "loss of use" of property.  (Policy, § 3.03.02.01 ("This Policy excludes: Loss or damage arising from delay, loss of market, or loss of use.");  *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1007 (7th Cir. 2021) ("The hotel was not physically harmed or damaged in any way. Instead, Bradley was prohibited from using it for functions such as in-person dining, weddings, or large meetings. This loss of use fell squarely within the terms of the exclusion.");  *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834. 842-43 (N.D. Cal. 2020), *aff'd on other grounds*, 15 F.4th 885 (9th Cir. 2021) (noting that "loss of use" exclusion supported dismissal);  *O'Brien Sales &*

*Mktg., Inc. v. Transp. Ins. Co.*, 512 F. Supp. 3d 1019, 1023 (N.D. Cal. 2021) (applying "loss of use" exclusion to COVID-19-related losses); *LDWB #2 LLC v. FCCI Ins. Co.*, No. 20-cv-425, 2021 WL 2744568, at *4 (W.D. Tex. July 1, 2021), *report & recommendation adopted by* 2021 WL 34861122 (July 26, 2021) (finding "that construing the Policy's requirement of "direct physical loss of or damage to property" to include the mere loss of use of the insured property "with nothing more would negate the 'loss of use' exclusion."). This exclusion reinforces the language in the coverage grant to ensure that the purely economic, non-physical "loss of use" of property does not otherwise implicate coverage in the absence of any tangible physical harm.

In this case, Plaintiff alleges that it suffered economic losses because it lost the use of its various properties.[60]  Accordingly, Zurich respectfully requests that this Court dismiss Plaintiff's claim based on this exclusion.

### 3.   Law Or Ordinance Exclusion

The Policy also excludes any "loss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the … *occupancy, operation or other use* … of any property."  *See* Policy § 3.03.01.03.  Here, Plaintiff has alleged that as of March 18, 2020, nine of its stores were subject to "Civil Authority Orders," although Plaintiff also states that between March 16, 2020 and April 9, 2020 governments issued orders requiring Plaintiff to either cease or severely restrict operations at **all** its stores.  *See* POC ¶¶ 110, 114.[61]  Given Plaintiff's operations were effectively curtailed by the government orders, this exclusion applies as well.

---

[60] POC ¶¶ 101, 104, 125-26, 154, 167.

[61] Plaintiff claims the orders were not the cause of its closures yet later alleges these orders prohibited access to its locations and caused it losses.  *Id.* ¶¶ 114, 167.

### E.  Amendment is Futile

The Court should deny any request to amend the complaint.  Plaintiffs' losses are not covered under the clear terms of the Policy, and thus any amendment would be futile.  Courts may deny amendment under such circumstances.  *See Terry Black's*, 22 F.4th at 459 (upholding denial of leave to amend because "[t]he unambiguous terms of the policy preclude coverage of [the] claimed losses and therefore the district court did not err in denying leave to amend based on futility"); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (leave to amend may properly be denied "where the proposed amendment would be futile because it could not survive a motion to dismiss").

### CONCLUSION

Plaintiff cannot plausibly allege facts to support coverage under the Policy.  Accordingly, Zurich respectfully asks the Court grant its Motion to Dismiss and dismiss Plaintiff's POC, in its entirety, with prejudice, and that Defendant be granted any such other and further relief to which it may be justly entitled.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: */s/ Peri H. Alkas*_____
       Peri H. Alkas
       Texas Bar No.  00783536
       910 Louisiana Street; Suite 4300
       Houston, Texas 77002
       Telephone: 713 626 1386
       Facsimile: 713 626 1388
       Email: peri.alkas@phelps.com

**ATTORNEYS FOR DEFENDANT,**
**ZURICH AMERICAN INSURANCE**
**COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of May, 2022, the foregoing instrument was electronically filed with the Clerk of Court via the Court's CM/ECF system which will provide notice of such filing to all counsel of record.

Alan S. Loewinsohn                                      E-MAIL: alanl@ldsrlaw.com
Kerry Florence Schonwald                                        kerrys@ldsrlaw.com
LOEWINSOHN DEARY SIMON RAY, LLP
12377 Merit Dr., Suite 900
Dallas, TX 75251


                                        */s/ Peri H. Alkas*
                                        Peri H. Alkas

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TEXAS CLOTHING HOLDING CORP.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 3:22-CV-00590-X** |
| | § | |
| | § | |
| | § | |
| **ZURICH AMERICAN INSURANCE** | § | |
| **COMPANY** | § | |
| *Defendant.* | § | |

===================================================================
**APPENDIX TO ZURICH'S BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS**
===================================================================

Respectfully submitted,

BY: */s/ Peri H. Alkas*
Peri H. Alkas
ATTORNEY-IN-CHARGE
SBN:  00783536
Fed. ID No.: 15787
PHELPS DUNBAR LLP
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone:  (713) 626-1386
Facsimile:  (713) 626-1388
E-mail:  alkasp@phelps.com

**ATTORNEY-IN-CHARGE FOR DEFENDANT,**
**ZURICH AMERICAN INSURANCE**
**COMPANY**

26

The relevant Policy language includes as follows:

SECTION I - POLICY APPLICABILITY

    1.01.   INSURING AGREEMENT

This Policy Insures against *direct physical loss of or damage* caused by a Covered Cause of Loss to Covered Property, at an Insured Location described in Section II-2.01, all subject to terms, conditions and exclusions stated in this Policy.[62]

                 \* \* \* \*

    3.03.   EXCLUSIONS

The following exclusions apply unless specifically stated elsewhere in this Policy:

3.03.01.        This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.

3.03.01.01.    **Contamination**, and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.[63]

                 \* \* \* \*

3.03.01.03.    Loss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, improvement, modification, demolition, occupancy, operation or other use, or removal including debris removal of any property. [herein referred to as "Law or Ordinance Exclusion][64]

3.03.02.        This Policy excludes:

3.03.02.01.    Loss or damage arising from delay, loss of market, or loss of use.[65]

                 \* \* \* \*

3.03.02.05.  Loss or damage resulting from the insured's suspension of business activities, except to the extent provided by this Policy.

                 \* \* \* \*

SECTION IV - TIME ELEMENT

    4.01. LOSS INSURED

4.01.01.        The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurance

---

[62] Emphasis added.

[63] Herein referred to as "Contamination Exclusion"

[64] Herein referred to as "Law or Ordinance Exclusion."

[65] Herein referred to as "Loss of Use Exclusion"

under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location,** or as provided in Off Premises Storage for Property Under Construction Coverages.

## 4.02. TIME ELEMENT COVERAGES

### 4.02.01.        GROSS EARNINGS

4.02.01.01.    Gross Earnings loss is the actual loss sustained by the Insured during the Period of Liability.
* * * *

### 4.02.03.        EXTRA EXPENSE

The Company will pay for the reasonable and necessary Extra Expense incurred by the Insured, during the Period of Liability, to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy at a **Location**.

### 4.02.04.        LEASEHOLD INTEREST

The Company will pay for the actual Leasehold Interest loss incurred by the Insured (as lessee) resulting from direct physical loss of or damage caused by a **Covered Cause of Loss** to a building (or structure) which is leased and not owned by the Insured, as follows:
* * * *

### 4.02.06.        EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to Time Element Coverage:

4.02.06.01.    This Policy does not insure against:
* * * *

4.02.06.01.01.03.        Any reason other than physical loss or damage insured by this Policy.
* * * *

## 4.03.        PERIOD OF LIABILITY

4.03.01.        The Period of Liability applying to all Time Element Coverages, except Gross Profit and Leasehold Interest, and as shown below or if otherwise provided under any Special Coverage, and subject to any Time Limit provided in 2.03.09., is as follows:

4.03.01.01.        For building and equipment: The period staring from the time of physical loss or damage of the type insured against and ending when with due diligence and dispatch the building and equipment could be repaired or

replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage.  The expiration of this Policy will not limit the Period of Liability.

   \* \* \* \*

## SECTION V - SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS:

### 5.02.03. CIVIL OR MILITARY AUTHORITY

The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location.** That *order must result from a civil authority's response to direct physical loss of or damage caused by a Covered Cause of Loss to property* not owned, occupied, leased or rented by the Insured or insured under this policy and located within the distance of the Insured's Location as stated in the Declarations.  The *Company* will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time the order remains in effect, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.[66]

   \* \* \* \*

### 5.02.05. CONTINGENT TIME ELEMENT

This Policy covers the   actual Time Element loss as provided by the Policy, sustained by the Insured during the Period of Liability directly resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** results from direct physical loss of or damage caused by a **Covered Cause of Loss** to Property (of the type insurable under this Policy) at **Direct Dependent Time Element Locations, Indirect Dependent Time Element Locations**, **and Attraction Properties** located worldwide, except for in the following:

   \* \* \* \*

Afghanistan, Albania, Algeria, … Zambia, Zimbabwe; or

Any other country where prohibited by United States law or where trade relations are unlawful as determined by the Government of the United States of America or its agencies.

### 5.02.23. PROTECTION AND PRESERVATION OF PROPERTY

The Policy covers, up to the limit applying to this Coverage:

5.02.23.01.    The reasonable and necessary costs incurred for actions to temporarily protect or preserve **Covered Property**; provided such actions are

---

[66] Emphasis added.

necessary *due to actual or imminent physical loss or damage* due to a *Covered Cause of Loss* to such Covered Property…[67]

The Policy contains the following definitions in Section VII - DEFINITIONS:

7.09.  **Contamination (Contaminated)** – Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, ***virus***, disease causing or illness causing agent, Fungus, mold or mildew.[68]

\*\*\*\*

7.11  **Covered Cause of Loss** – All risks of direct physical loss of or damage from any cause unless excluded.

\*\*\*\*

7.69.  **Suspension (Suspended)** –

7.69.01.  The slowdown or cessation of the Insured's business activities; or

7.69.02.  As respects rental income that a part or all of the Insured Location is rendered untenantable.

---

[67] Emphasis added.

[68] Emphasis added.